IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| REID I. TAMAYOSE and NADINE K. TAMAYOSE, | ) ) ) | Case No. CV10-00185 JMS BMK |
| Plaintiff, | ) ) ) | MEMORANDUM IN SUPPORT OF MOTION |
| vs. | ) ) | |
| OPTION ONE MORTGAGE CORPORATION, its successors and assigns; H&R BLOCK BANK; RESIDENTIAL CREDIT SOLUTIONS, INC.; and DOES 1-30, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| RESIDENTIAL CREDIT SOLUTIONS, INC. | ) ) ) | |
| Third-party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| OLD REPUBLIC TITLE & ESCROW OF HAWAII, INC. | ) ) ) | |
| Third-party Defendant. | ) ) ) | |

MEMORANDUM IN SUPPORT OF MOTION

I.  **BACKGROUND**.

On or about November 22, 2006, Plaintiff REID I. TAMAYOSE

signed an <u>Adjustable Rate Note</u> ("Note") in favor of Option One

Mortgage Corporation in the amount of $1,025,000.00. <u>See</u>

Deposition of Reid I. Tamayose, taken July 21, 2011, p. 55, line 12 – p. 56, line 10 (Exhibit "A").

Repayment of the Note was secured by a Mortgage dated November 22, 2006, and recorded in Bureau of Conveyances of the State of Hawaii as Document No. 2006-218902.  See Deposition of Reid I. Tamayose, taken July 21, 2011, p. 59, line 25 – p. 63, line 14; Deposition of Nadine K. Tamayose, taken July 21, 2011, p. 51, line 25 – p. 53, line 11 (Exhibit "B").  The Mortgage was signed by Plaintiffs REID I. TAMAYOSE and NADINE K. TAMAYOSE ("TAMAYOSES") recorded as a valid first lien against the property identified as 6789 B Kuamoo Rd., Kapaa, Hawaii 96746 (TMK: (4) 4-2-019-022).

The Mortgage was subsequently assigned by virtue of the Assignment of Mortgage and Note dated October 16, 2007, and recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 2007-187638 and Assignment of Mortgage and Note dated June 16, 2009, and recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 2009-103035.  Attached as Exhibits "C" and "D" and certified copies of the respective assignments.

RCS is the current holder, possessor and owner of the Note and Mortgage, and the entity to whom the TAMAYOSES were to be making their payments.  See Deposition of Nadine K. Tamayose, taken July 21, 2011, p. 107, lines 3 – 14 (Exhibit "E").

As part of the closing of the mortgage loan transaction, they executed a variety of documents on November 24, 2006, including a Notice of Right to Cancel. See Deposition of Reid I. Tamayose, taken July 21, 2011, p. 71, lines 3 - 12; Deposition of Nadine K. Tamayose, taken July 21, 2011, p. 59, line 21 - p. 60, line 17 (Exhibit "F").

On or about February 1, 2008, the TAMAYOSES defaulted under the terms of the Note and/or Mortgage due to non-payment. See Deposition of Reid I. Tamayose, taken July 21, 2011, p. 108, line 16 - p. 109, line 23; Deposition of Nadine K. Tamayose, taken July 21, 2011, p. 105, line 4 - p. 106, line 15 and p. 108, line 5 - p. 109, line 3 (Exhibit "G").

On or about June 2, 2008, RCS sent a notice of default and acceleration letter to REID I. TAMAYOSE. See Deposition of Reid I. Tamayose, taken July 21, 2011, p. 110, line 2 - p. 111, line 13; Deposition of Nadine K. Tamayose, taken July 21, 2011, p. 107, line 15 - 22 (Exhibit "H").

On or about December 4, 2008, the TAMAYOSES, attempted to cancel their loan by sending notice to Option One Mortgage Corporation and H&R Block Bank, Defendants herein. See Deposition of Reid I. Tamayose, taken July 21, 2011, p. 74, line 11 - p. 77, line 18 and Deposition of Nadine K. Tamayose, taken July 21, 2011, p. 83, line 4 - p. 84, line 13   (Exhibit "I"). The TAMAYOSES claimed in their letter that there were "numerous

(1) federal Truth-in-Lending Act violations, including but not limited to the failure to deliver to each of them two completed copies of the notice of right to cancel, and inaccurate and confusing numerical disclosures, (2) unfair and deceptive acts and practices, and (3) fraud and misrepresentations throughout said loan transaction, including false loan applications." Exhibit "I".

On November 23, 2009, Plaintiffs filed their Complaint for Injunctive Relief Against Wrongful Foreclosure, for Declaratory Judgment, and for Actual and Punitive Damages in the First Circuit Court of the State of Hawaii during the pendency of a non-judicial foreclosure matter commenced by RCS.

RCS has not proceeded with foreclosure pending the outcome of this federal action.

The action was subsequently removed to this Court by Notice of Removal filed March 30, 2010.

II. **STANDARD OF REVIEW**.

Fed. R. Civ. Proc. Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

"A material fact is one which may affect the outcome of the litigation." Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial, usually, but not always, the Defendant, has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In

setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as

well as from disputed facts that the judge is required to

resolve in favor of the nonmoving party. T.W. Elec. Serv., 809

F.2d at 631.


III. **ARGUMENT**.

    A.    **Tamayoses are not entitled to cancellation under TILA**.

Count I of the Complaint states as follows:

> 12. Tamayoses seek a declaratory judgment that said 2006 loan has been cancelled as a matter of federal law and that said nonjudicial foreclosures were and are wrongful, and preventing Option One, H&R, and/or RCS from scheduling any further nonjudicial foreclosure actions and pursuing any transfer of title to either of them or to a third party by exercising a "power of sale" clause in their adhesive 2006 Mortgage in violation of Tamayoses' contractual, statutory, and due process rights as prohibited state action under both the United States and Hawaii State Constitutions, and to an award of actual and/or statutory damages, including attorneys' fees and costs and including from and against Does once identified, as found to be appropriate upon the trial of this case.

Section 1635(a) states as follows with regard to a

borrowers' right to rescind the mortgage loan:

> (a) Disclosure of obligor's right to rescind

> Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and

rescission forms required under this section together
with a statement containing the material disclosures
required under this subchapter, whichever is later, by
notifying the creditor, in accordance with regulations
of the Board, of his intention to do so. The creditor
shall clearly and conspicuously disclose, in
accordance with regulations of the Board, to any
obligor in a transaction subject to this section the
rights of the obligor under this section. The creditor
shall also provide, in accordance with regulations of
the Board, appropriate forms for the obligor to
exercise his right to rescind any transaction subject
to this section.

15 U.S.C. §1635.

## 1.   **TILA damages are barred by the statute of limitations**.

Even if, for argument's sake, the TAMAYOSES did not receive

two copies of the Notice of Right to Cancel document and had

three years to cancel the loan, they are barred by the statute

of limitations to bring a claim for damages.

Any claim by Plaintiff for damages arising from an alleged

violation of TILA is barred by the statute of limitations:

> A TILA plaintiff may seek actual damages for
> a lender's failure to provide proper
> disclosures. See 15 U.S.C. § 1640(a). Under
> 15 U.S.C. § 1640(e), however, an action for
> damages by a private individual must be
> instituted "within one year from the date of
> the occurrence of the violation." The Ninth
> Circuit has interpreted this to mean that
> the limitations period for a damage claim
> based on allegedly omitted or inaccurate
> disclosures begins on "the date of
> consummation of the transaction." <u>King v.
> Cal.</u>, 784 F.2d 910, 915 (9th Cir.1986); see
> also <u>Hubbard v. Fidelity Fed. Bank</u>, 91 F .3d
> 75, 79 (9th Cir.1996) (holding that when a
> lender fails to comply with TILA's initial

> disclosure requirements, a borrower has one
> year from obtaining the loan to file suit).
> To the extent Santiago seeks money damages
> for TILA violations arising out of the
> November 2007 loan, those claims are barred
> by the one-year statute of limitation, as
> Santiago did not file his Complaint until
> August 13, 2010.

Santiago v. Bismark Mortgage Co., LLC, 2011 WL 839762, *7 (D.

Haw. 2011). Here, the TAMAYOSES' mortgage loan originated on or

around November 24, 2006. This lawsuit, however, was not

brought until November 23, 2009, three years later. Well in

excess of the one year requirement to seek actual damages.

### 2.   **No right of rescission – not a consumer loan**.

Section 1635 of the Truth-in-Lending Act provides that a

person is only afforded the right to rescind if the transaction

involves consumer credit:

> (a) Disclosure of obligor's right to rescind
>
> Except as otherwise provided in this section, in the
> case of any consumer credit transaction (including
> opening or increasing the credit limit for an open end
> credit plan) in which a security interest, including
> any such interest arising by operation of law, is or
> will be retained or acquired in any property which is
> used as the principal dwelling of the person to whom
> credit is extended, the obligor shall have the right
> to rescind the transaction until midnight of the third
> business day following the consummation of the
> transaction or the delivery of the information and
> rescission forms required under this section together
> with a statement containing the material disclosures
> required under this subchapter, whichever is later, by
> notifying the creditor, in accordance with regulations
> of the Board, of his intention to do so. The creditor
> shall clearly and conspicuously disclose, in
> accordance with regulations of the Board, to any

obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

"Consumer credit transaction" is defined in section 1679a (2) which states, "The term "consumer credit transaction" means any transaction in which credit is offered or extended to an individual for personal, family, or household purposes." 15 U.S.C. §1679a.

Here, a portion of the loan proceeds[1] went to fund the purchase of a mini mart:

---

[1] Plaintiff REID I. TAMAYOSE authenticated the Settlement Statement from the closing of the mortgage loan transaction which is the subject of this lawsuit:

Q.    This might help you recall.  I'm going to hand you what the court reporter will mark as Exhibit 1.

(Exhibit 1 marked for identification.)

BY MS. PARK-HOAPILI:

Q.    Can you take a quick look at Exhibit 1?

A.    I thought you said it was 1.25.  It's 1,025,000 isn't it?

Q.    Maybe I misspoke.

A.    I believe you did.

Q.    Okay.  You're done reviewing it?

A.    What would you like me to review on this; everything?

Q.   Okay.  I'm going to show you what we've marked as Exhibit 1.

A.   Okay.  Let's see.

Q.   Do you see that, what we've marked as Exhibit 1?

A.   Okay.  What are we looking at?

Q.   It's a settlement statement and it gives you a breakdown of the monies that were paid off and/or received in this loan, subject loan transaction.

A.   So I'm looking at --

Q.   I'm just explaining it to you.

A.   Okay.

Q.   So if you look at number 104 -- do you see that on the left-hand column?

A.   Okay.

Q.   It says Additional Proceeds to First Hawaii Title.  Do you see that?

A.   Okay.

---

Q.   Do you recognize this document?

A.   I recognize my name on it, but I signed a lot of documents and I don't particularly remember this personal document.

Q.   Okay.  If I tell you that this is the settlement statement for the subject loan, does that look correct to you?

A.   I believe so.

Deposition of Reid I. Tamayose, taken July 21, 2011, p. 34, lines 4 - 24 (Exhibit "J").

Q.   And it says $171,610.51.

A.   Okay.

Q.   Did you have any escrow transactions with First
     Hawaii Title?

A.   Is that this one?  Is it this?

Q.   I can't answer that for you.  I'm just asking you
     —

A.   Is this -- what is this?  Are you saying -- I
     mean, are we talking about this in particular?
     Are you saying this 171,610.51?

Q.   Where did that money go to, 171,610.51?

A.   Is that the question?

Q.   Yes.  Where did that money go to?

A.   Oh.  Okay.  It would have gone to our business, I
     would assume.

Q.   What business?

A.   The Tsuni's Mini Mart.

Q.   Oh.  It went to buy that business?

A.   Yes.

Q.   Okay.  So you had an ongoing escrow with First
     Hawaii Title to buy the business?

A.   I'm assuming so, yes.  I'm assuming so.

Deposition of Nadine K. Tamayose, taken July 21, 2011, p. 36,

line 5 - p. 37, line 20 (Exhibit "K").

Therefore, the mortgage loan transaction was not for a

"personal, family or household purpose," rather it was for the

purchase of a business.  As such, the TAMAYOSES are not entitled to rescission of the mortgage loan.

### 3.   No cancellation - Tamayoses did not cancel their loan within the 3-day time frame.

The TAMAYOSES' in their Complaint claim that they are entitled to canceled their mortgage loan pursuant to the Truth-in-Lending Act because they did not receive the requisite number of copies of the Notice of Right to Rescind documents.

However, at their deposition, after admitting to signing the Notice of Right to Cancel acknowledging receipt of two copies, they could not state for certain whether they received the requisite copies after all:

> Q.   Do you see what we've marked as Exhibit 7, handed over to you?
>
> A.   Yes.
>
> Q.   Do you recognize this document?
>
> A.   No.
>
> Q.   Have you seen it before?
>
> A.   Possibly.
>
> Q.   If you look at the lower left-hand corner of the page, is that your signature?
>
> A.   Yes.
>
> .  .  .

Q.   Do you recall receiving your two copies of this document?

A.   I do not remember.

Deposition of Reid I. Tamayose taken July 21, 2011, p. 71, lines 3 – 12; p. 74, lines 4 – 6 (Exhibit "L").  Plaintiff NADINE K. TAMAYOSE testified similarly:

Q.   Handing you what we've marked as Exhibit 7 -- do you recognize this document?

A.   The right to cancel -- if I've seen it recently?

Q.   No.  Do you recognize this document?

A.   I would say maybe.

Q.   Well, have you seen it before?

A.   It's a possibility.

Q.   In the lower right-hand corner, is that your signature on the --

A.   Left.

Q.   -- last line, left-hand corner?

A.   Okay.  Yeah.

Q.   Is that your signature?

A.   Yes.  I'm just -- when you ask me questions about the document and if I recall the document, I'm trying to think if I actually recall the document when I've signed it, is why I got confused.

Q.   That's okay.  But you acknowledge that that is your signature; correct?

A.   Yes.

. . .

Q.   But by signing it, you've acknowledged that you received two copies of the notice of right to cancel; correct?

A.   If we received two copies?

Q.   By signing it, you've acknowledged -- it says you acknowledge that you received two copies; correct?

A.   Does it say that?  I'm sorry.

Q.   Uh-huh.  On the date listed above we the undersigned each received two completed copies of the notice of right to cancel.  It's right above the signature.

A.   Oh.  I'm sorry.  Okay.  Ask me the question again.  What was the question?  If we received two --

Q.   I said you acknowledge that you received two copies of the notice of right to cancel; correct?

A.   I want to say it's a possibility.  I don't remember.

Deposition of Nadine K. Tamayose taken July 21, 2011, p. 59,

line 21 – p. 60, line 17; p. 62, lines 2 – 21 (Exhibit "M").

   Had the TAMAYOSES received their two copies of the

documents, they had until November 28, 2006, to cancel their

mortgage loan.  However, neither of the TAMAYOSES were able to

testify that they cancelled the mortgage loan either on or

before that date:

Q.    Uh-huh.  Did you contact the lender on November 28, 2006 to cancel?

A.    I'm not too sure.

. . .

Q.    Did you ever contact the lender to let them know that you wanted to cancel the loan?

A.    I don't recall.

Q.    You don't recall contacting the lender?

A.    Unh-unh.

Q.    Is it that you did not?

A.    I don't believe I did personally.  My wife maybe, but as far as me myself, I did not.

Deposition of Reid I. Tamayose taken July 21, 2011, p. 72, lines 15 – 17 and p. 73, lines 4 – 11 (Exhibit "N").  Plaintiff NADINE K. TAMAYOSE, testified as follows:

Q.    Did you send any notice of cancellation by November 28, 2006?

A.    I cannot remember.

Q.    Do you remember if you notified anyone that you were cancelling your loan on November 28th, 2006?

A.    I cannot remember.  I don't recall.

Deposition of Nadine K. Tamayose taken July 21, 2011, p. 61, lines 3 – 9 (Exhibit "O").

In fact, REID I. TAMAYOSE testified that he did not instruct his attorney to send any cancellation letter:

Q.    We'll look at what we've marked as Exhibit 8.

(Exhibit 8 marked for identification.)

BY MS. PARK-HOAPILI:

Q.   I'm handing you what we've marked as Exhibit 8.

     Do you recognize this document?

A.   This document, I do remember.

. . .

Q.   But you personally did not call Mr. Dubin?

A.   I personally did not call Mr. Dubin.

Q.   You said you've seen this letter.  Do you know
     what this letter is?

A.   I'm sorry.  I didn't see the letter, but this I
     remember, the Dubin Law Offices.  We had three or
     four papers or something like that.  I just
     briefly -- I just saw the square Dubin Law
     Offices.

Q.   Do you recognize this letter?

A.   I'm not too sure.

Q.   Did you ask Mr. Dubin to send a letter to H&R
     Block Bank and Option One Mortgage Corporation?

A.   Me personally, no.

Deposition of Reid I. Tamayose taken July 21, 2011, p. 74, lines

7 - 13 and p. 75, lines 13 - 25 (Exhibit "P").

     Therefore, even if the TAMAYOSES had the right to cancel

the mortgage loan, they did not do so within the time frame

required under TILA.

4.   **Tamayoses unable to tender the rescission amounts then and unable to tender the rescission amounts now**.

The Ninth Circuit Court of Appeals stated as follows when it denied the borrower's rescission claim on the basis that the borrower was unable to tender the loan proceeds:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures *after* deciding that rescission is warranted, may not do so *before* deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

Yamamoto v. Bank of New York, 329 F.3d 1167, 1173 (9th Cir. 2003).   Similarly, the TAMAYOSES clearly testified that they do not have the funds to tender if they were to prevail on their $1635 rescission claim.

Plaintiff REID I. TAMAYOSE testified as follows:

> Q.   In December 2008, do you know how much money your mother would have been able to give to you to help you pay back the approximately one million dollars of this loan?

> A.   She would help me, but I'm not -- I don't have -- like the amount of money she has in her account, I don't know that much.

Q.   What about your aunties; do you know how much money they would be able to give you to help you repay approximately one million dollars in December 2008?

A.   I don't know how much, but they would help me.

Q.   Assuming that they would not be able to help you, would you alone be able to repay one million dollars in December 2008?

A.   No.

Q.   What about 900,000?

A.   No.

Q.   800,000?

A.   No.

Q.   700,000?

A.   Without help?

Q.   Without help.  Just you and --

A.   No.

Q.   -- with your wife.

A.   No.

Q.   500,000?

A.   No.

Q.   300,000?

A.   Out-of-pocket, just one lump some?

Q.   Uh-huh.

A.   No.

```
Q.    Do you know how much money you would be able to
      repay in December 2008?

A.    I do not know.
```

Deposition of Reid I. Tamayose taken July 21, 2011, p. 115, line

25 – p. 117, line 10 (Exhibit "Q").

Plaintiff NADINE K. TAMAYOSE testified as follows:

```
Q.    Okay.  That's fine.  In December 2008, were you
      able to return to the bank that gave you the
      money the loan proceeds, which was $1,025,000,
      less the finance charges, interest and other
      deductions that are permitted under the statute,
      which calculate to approximately one million
      dollars?  It's one million twenty-five minus
      approximately 18,335.46 in, you know, real
      property charges and other settlement charges
      that were paid off in the loan, less some of the
      interest, bringing it down to about a million
      dollars.  Could you have paid back that money to
      the lender on December 4th, 2008?

A.     There's a possibility.


 .  .  .


Q.    Did you ask your mother-in-law to give you one
      million dollars?

A.    No.  We haven't asked yet.  No, we haven't asked.

Q.    Was there anybody else that was going to help you
      pay back that amount in December 2008?

A.    You mean if I would ask anybody else?

Q.    No.  In December 2008, you said your mother-in-
      law possibly.

A.    I mean, if we're talking about -- if you're
      talking about possibly, which is the word,
      possibly asking anybody for money for help,
```

        right, in regards to the loan and paying back
        money, then I would use her name.

    Q.  So your mother-in-law; that's it?  What about you
        and your husband; could you alone, without your
        mother-in-law, pay back one million dollars in
        December --

    A.  You want –

    Q.  -- 2008?  Let me finish my question.

    A.  Oh.  Sorry.

    Q.  In December 2008, could you and your husband
        alone pay back one million dollars?

    A.  In a lump sum?

    Q.  Yes.

    A.  I would say no.

Deposition of Nadine K. Tamayose taken July 21, 2011, p. 76,

line 10 – 24; p. 77, line 10 – p. 78, line 10 (Exhibit "R").

    In fact, it is unlikely that the TAMAYOSES would be able to

repay any money even today:

    Q.  In 2008, do you know what your mortgage payment
        was, your monthly mortgage payment?

    A.  On the top of my head, no.

    Q.  Is about $7,000 approximately how much you were
        paying per month in 2008?

    A.  I don't think 7,000.  Right?  I don't know.  I
        don't think 7,000.

    Q.  How much do you think you were paying?

    A.  I don't know.  What did we say?  I don't know.
        What did we say?  6,000, was it, it said in the

papers?  6,000 something maybe.  I think that's what I saw.

Q.   Let's go with 6,000 then.  So basically, if you were making $6,000 a month mortgage payments, and let's just say that you haven't paid since this letter marked as Exhibit 8 was sent, which was December 4th, 2008 -- so that would mean from January of 2009, no mortgage payments were being made until today.  So that's approximately 30 months of not making mortgage payments; is that correct?

A.   I think so.  I don't know.

Q.   So 30 months times $6,000, that's $180,000.

A.   Okay.

Q.   Right?

A.   Yeah.  If that's what you're showing me, then yeah.

Q.   Let me just do it so that you can see.  6,000 times 30 months equals 180,000.

A.   Okay.

Q.   Do you have $180,000 today?

A.   No, not today.

<u>Deposition of Nadine K. Tamayose</u> taken July 21, 2011, p. 112, line 1 - p. 113, line 7 (Exhibit "S").

As such, the TAMAYOSES are not entitled to declaratory judgment declaring the mortgage loan canceled or rescinded.

**B.    <u>Request for injunctive relief is moot</u>.**

Count II of the <u>Complaint</u> seeks injunctive relief to prevent RCS from proceeding with a non-judicial foreclosure.

Given the Court's ruling to allow amendment of the pleadings so that RCS may assert a judicial foreclosure, Count II is now moot.

### C.   **Tamayoses are not entitled to punitive damages**.

Count III of the Complaint requests punitive damages for wrongful foreclosure.  To the extent that the non-judicial foreclosure did not take place and, in fact, a foreclosure has yet to take place, the request is moot.

Even if the request is not moot, it is uncertain what was so "wrongful" about proceeding with a foreclosure.  See Doran v. Wells Fargo Bank, No. 11-00132, 2011 WL 2160643, at *13 (D. Haw. May 31, 2011).  The TAMAYOSES have admitted to making the mortgage loan and have admitted to not making all of the payments due thereunder which would be adequate to satisfy a prima facie case for foreclosure under Bank of Honolulu, N.A. v. Anderson, 3 Haw. App. 545, 551 654 P.2d 1370, 1375 (1982).

Secondly, the TAMAYOSES have not been able to articulate how they have been damaged, much less provide proof of damages:

> Q.   Okay.  Well, in this letter you indicate that there were several federal Truth In Lending Act violations.  Can you identify them for me?
>
> A.   I cannot.
>
> Q.   Is there a reason why you can't identify them?
>
> A.   I'm vague on it.
>
> Q.   What do you mean vague on it?

A.   I don't know.

Q.   Well, you brought this lawsuit, so I'm just trying to figure out -- I mean, you're saying in this letter, first, that there are certain violations.   What violations are there?

A.   Me and my wife are together on this and, like I said, she'll be able to tell you a little bit more than me.

Q.   But you are also identified as a plaintiff in this lawsuit, so I need to know what -- if there are -- what federal Truth In Lending Act violations you are referring to in this letter.

A.   Well, from what it says in here, unfair and deceptive acts and practices, misrepresentation aside from fraud and false loan applications. I'm just going by what it says here.

Q.   I'm asking you if --

A.   Well, I'm telling you what I'm telling you here.

Q.   So what misrepresentations were made?

A.   That, I cannot tell you.

Q.   Is there a reason why?

A.   Because I'm unclear.

Q.   You're unclear of what misrepresentations were made?

A.   Yes, I am unclear.

Q.   This is your loan and you're unclear of what misrepresentations you're claiming –

A.   This is me and my wife's loan.

Q.   And you're saying unfair and deceptive trade practices.   What violations were made?

A.   I'm unclear.

> Q.   In this letter you're saying that you want damages.  What damages are you requesting in this letter?
>
> A.   I'm sorry?
>
> Q.   What damages are you seeking in this letter?
>
> THE WITNESS:  What type of damages?
>
> BY MS. PARK-HOAPILI:
>
> Q.   Are you seeking any damages by this letter?
>
> A.   Well, there was two foreclosures called upon our house, I believe, or two times that it was supposed to go to be auctioned off, and those were very unclear to us on why it was -- why we were being sent that letter on foreclosure, and that was just a very stressful time for us.

Deposition of Reid I. Tamayose taken July 21, 2011, p. 77, line 19 – p. 79, line 24 (Exhibit "T").  Plaintiff NADINE K. TAMAYOSE testified similarly as follows:

> Q.   In your attorney's letter it indicates that you are seeking damages.  What damages are you seeking in this letter?
>
> A.   I cannot talk about damages.  I mean --
>
> Q.   We're entitled to know what damages you are seeking in order to –
>
> A.   I don't know.
>
> Q.   -- proceed in this lawsuit.
>
> A.   I'll just say I don't know -- I don't know specific.  I don't know specific amounts.  I don't know exactly.  I didn't read exact amounts and memorize them.  That's what I'm saying.
>
> Q.   Are you seeking damages?

A.    I know that it's in there.  I don't recall what the amounts are, so I don't —

Q.    I don't know what the amounts are either.

A.    Yeah.  I guess --

Q.    Let me finish, for the court reporter.  I don't know what the amounts are either, so in order to try to resolve this lawsuit, we need to figure out if you are seeking damages, what amounts are you seeking.

A.    I'll say I don't know.

Q.    You don't know?

A.    Because I don't.  Off the top of my head, I don't know.  I don't know numbers, no.

Q.    Are you seeking a dollar?  Are you seeking a million dollars?

A.    I don't know.

Deposition of Nadine K. Tamayose taken July 21, 2011, p. 72, line 9 – p. 73, line 12 (Exhibit "U").

The TAMAYOSES, in fact, have not suffered any damages. Rather they have been able to continue enjoying the benefits of home ownership without having to pay anything for living there since February 2008.

## II.   CONCLUSION.

For the foregoing reasons, RCS requests that its Motion be granted.

Dated: Honolulu, Hawaii, September 12, 2011.

/S/ KARYN A. DOI (#7687)
KARYN A. DOI
Attorney for Defendant
RESIDENTIAL CREDIT SOLUTIONS, INC.