EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

REID I. TAMAYOSE and          )

NADINE K. TAMAYOSE,           )

        Plaintiffs, )

      vs.                     )   CASE NO. CV10 00185

OPTION ONE MORTGAGE           )          JMS BMK

CORPORATION, its successors)

and assigns; H&R BLOCK        )

BANK; RESIDENTIAL CREDIT      )   DEPOSITION OF

SOLUTIONS, INC.; and DOES     )   REID I. TAMAYOSE

1-30,                         )   July 21, 2011

        Defendants. )

_____ )

RESIDENTIAL CREDIT            )

SOLUTIONS, INC.,              )

        Third-Party )

        Plaintiff, )

     vs.                      )

OLD REPUBLIC TITLE &          )

ESCROW OF HAWAII, LTD.,       )

        Third-Party )

        Defendant. )

_____ )

1              DEPOSITION OF REID I. TAMAYOSE,

2   Taken on behalf of Defendants Option One Mortgage

3   Corporation, now known as Sand Canyon Corporation,

4   and H&R Block Bank at American Savings Bank Tower,

5   1001 Bishop Street, 20th Floor, Honolulu, Hawaii

6   96813, commencing at 9:04 a.m., on July 21, 2011,

7   pursuant to Notice.

8   BEFORE:   SUE M. FLINT, RPR, CSR 274

9             Notary Public, State of Hawaii

10

11  APPEARANCES:

12

13  For Plaintiffs:    BENJAMIN BROWER, ESQ.

14                     Dubin Law Offices

15                     55 Merchant Street

16                     Suite 3100

17                     Honolulu, Hawaii  96813

18

19  For Defendants Option One Mortgage Corporation, now

20  known as Sand Canyon Corporation and H&R Block Bank:

21                     SHELLIE K. PARK-HOAPILI, ESQ.

22                     Alston Hunt Floyd & Ing

23                     American Savings Bank Tower

24                     1001 Bishop Street, Suite 1800

25                     Honolulu, Hawaii  96813

1   Appearances (continued):

2

3   For Defendant Residential Credit Solutions:

4                    KARYN DOI, ESQ.

5                    LEU & OKUDA

6                    The Merchant House

7                    222 Merchant Street

8                    Main Floor

9                    Honolulu, Hawaii  96813

10

11   For Defendant Old Republic Title & Escrow of Hawaii,

12   Ltd.:

13                    KEVIN W. HERRING, ESQ.

14                    Ashford & Wriston

15                    Alii Place, Suite 1400

16                    1099 Alakea Street

17                    Honolulu, Hawaii  96813

18

19

20

21

22

23

24

25

1    if you don't make a payment under the promissory

2    note?

3         A.    My understanding of it?

4         Q.    Yes.

5         A.    I believe it affects your credit and you

6    have to pay more on the interest or something like

7    that.  That's my understanding.

8         Q.    Anything else?

9         A.    No.

10        Q.    Are you in default under this promissory

11   note?

12        A.    As of right now?

13        Q.    Currently.

14        A.    I don't know.

15        Q.    You know, after page three of three, if

16   you turn to page -- it says one of one, but it would

17   be four.

18        A.    Okay.

19        Q.    Is that your signature?

20        A.    Yes, it is.

21        Q.    Showing you what we'll mark as

22   Exhibit 4 --

23                  (Exhibit 4 marked for identification.)

24   BY MS. PARK-HOAPILI:

25        Q.    We've handed you what we've marked as

1     Exhibit 4.  Do you recognize this document?

2          A.    No.

3          Q.    On the first page, do you see where it

4     says Mortgage?

5          A.    Yes.

6          Q.    Do you know what a mortgage is?

7          A.    Yes.

8          Q.    What is your understanding of what a

9     mortgage is?

10         A.    A mortgage is what you have to pay monthly

11    to be in the place where you're living, if you're

12    under a loan.

13         Q.    Okay.  If you look on the first page, this

14    mortgage references the promissory note, or the

15    $1,025,000 loan.  Do you see that?

16         A.    Uh-huh.

17         Q.    Is this mortgage for the subject loan?  Is

18    this the mortgage for the subject loan?

19         A.    I believe so, because it says, but I'm not

20    sure.

21         Q.    Do you see on page two of nine it

22    references the subject property?

23         A.    Page two of nine?  Yes.  With the address?

24         Q.    With the address.  Do you see that?

25         A.    Yes.

1     Q.    And you previously testified today that

2    the loan that you got that's the subject of this

3    lawsuit was for the subject property; correct?

4     A.    Okay.  Yes.

5     Q.    If you look at page four of nine, right in

6    the middle it has paragraph six.  Do you see that?

7     A.    Occupancy?

8     Q.    Occupancy -- and going further down, it

9    says Borrower's Loan Application?

10     A.    Borrower's loan application.

11     Q.    It's on that same line.

12     A.    Yes.  Leaseholds.

13     Q.    This paragraph basically says that you

14    told the truth in your loan application which we

15    previously looked at as Exhibit 2.

16     A.    Okay.

17     Q.    Was your loan application truthful?

18     A.    I believe so.

19     Q.    And if you look further down on page four

20    of nine, paragraph seven --

21     A.    Protection?

22     Q.    Yes.  It says Protection of Lender's

23    Rights in the Property?

24     A.    Okay.

25     Q.    Can you take a quick -- take a minute.  I

1    won't say quick.  Sorry.  Can you take a minute or

2    two to read paragraph seven?

3         A.    Okay.  Wait.  Okay.  We're just reading

4    paragraph seven; correct?

5         Q.    Uh-huh.  You read that?

6         A.    Yes.

7         Q.    Is it your understanding that if you

8    failed to perform any of the covenants in this

9    mortgage, if you failed to perform your obligations

10   under the mortgage, that the lender can take action

11   against you, including but not limited to

12   foreclosing on the subject property?

13        A.    Well, now that I read it, yes.

14        Q.    Did you understand that at the time you

15   signed the mortgage?

16        A.    I don't recall.

17        Q.    Let's look at page nine of nine.  Is that

18   your signature?

19        A.    Yes.

20        Q.    Do you know why your wife also signed the

21   mortgage?

22        A.    I do not.

23        Q.    If you turn about two or three pages

24   further after, it's going to have page three of

25   three.

1     A.    Okay.

2     Q.    Is that your signature on that page?

3     A.    Yes.

4     Q.    And this was a signature for an adjustable

5   rate rider.  Do you see that?  Two pages forward.

6     A.    Two pages forward?  Okay.  Yes.

7     Q.    Do you see that?

8     A.    Uh-huh.

9     Q.    You indicated that on page three of three

10  to the adjustable rate rider is your signature;

11  correct?

12    A.    That's what it says on the paper.

13    Q.    That's your signature; correct?

14    A.    That is my signature, yes.

15    Q.    Did you understand that an adjustable rate

16  rider was part of your mortgage?

17    A.    Not that I recall.

18    Q.    What's your understanding of what an

19  adjustable rate rider is?

20    A.    I don't know what is that.  I'm guessing

21  that it's -- the interest rate fluctuates.  That's

22  what I'm just guessing.

23    Q.    And that's because you took out an

24  adjustable rate loan; correct?

25    A.    Correct -- I believe so.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

REID I. TAMAYOSE and            )

NADINE K. TAMAYOSE,             )

             Plaintiffs, )

        vs.                    )   CASE NO. CV10 00185

OPTION ONE MORTGAGE             )          JMS BMK

CORPORATION, its successors)

and assigns; H&R BLOCK          )

BANK; RESIDENTIAL CREDIT        )   DEPOSITION OF

SOLUTIONS, INC.; and DOES       )   NADINE K. TAMAYOSE

1-30,                           )   July 21, 2011

           Defendants. )

                        )
_____

RESIDENTIAL CREDIT              )

SOLUTIONS, INC.,                )

           Third-Party )

            Plaintiff,  )

        vs.                    )

OLD REPUBLIC TITLE &            )

ESCROW OF HAWAII, LTD.,         )

           Third-Party )

            Defendant.  )

                        )
_____

1              DEPOSITION OF NADINE K. TAMAYOSE,

2    Taken on behalf of Defendants Option One Mortgage

3    Corporation, now known as Sand Canyon Corporation,

4    and H&R Block Bank at American Savings Bank Tower,

5    1001 Bishop Street, 20th Floor Conference Room,

6    Honolulu, Hawaii  96813, commencing at 1:15 p.m., on

7    July 21, 2011, pursuant to Notice.

8    BEFORE:   SUE M. FLINT, RPR, CSR 274

9              Notary Public, State of Hawaii

10

11   APPEARANCES:

12

13   For Plaintiffs:      BENJAMIN BROWER, ESQ.

14                        Dubin Law Offices

15                        55 Merchant Street

16                        Suite 3100

17                        Honolulu, Hawaii  96813

18

19   For Defendants Option One Mortgage Corporation, now

20   known as Sand Canyon Corporation and H&R Block Bank:

21                        SHELLIE K. PARK-HOAPILI, ESQ.

22                        Alston Hunt Floyd & Ing

23                        American Savings Bank Tower

24                        1001 Bishop Street, Suite 1800

25                        Honolulu, Hawaii  96813

Page 3

1    Appearances (continued):

2

3    For Defendant Residential Credit Solutions:

4                        KARYN DOI, ESQ.

5                        LEU & OKUDA

6                        The Merchant House

7                        222 Merchant Street

8                        Main Floor

9                        Honolulu, Hawaii  96813

10

11   For Defendant Old Republic Title & Escrow of Hawaii,

12   Ltd.:

13                       KEVIN W. HERRING, ESQ.

14                       Ashford & Wriston

15                       Alii Place, Suite 1400

16                       1099 Alakea Street

17                       Honolulu, Hawaii  96813

18

19

20

21

22

23

24

25

1      A.     You could run into problems.

2      Q.     Like?

3      A.     You could run into problems.

4      Q.     Your house could be foreclosed on?

5      A.     Possibility, yeah.

6      Q.     And you understand that --

7      A.     Yes.  Sorry.

8      Q.     And you understood that at the time of

9   this loan -- of the subject loan transaction?

10      A.     I would say yes.

11      Q.     I'm going to show you what we've marked as

12   Exhibit 4.

13      A.     Okay.

14      Q.     Before we get to that, I have a quick

15   question.  Do you know why you were not on the loan?

16      A.     No.

17      Q.     Did you have bad credit?

18      A.     I don't remember.  I don't know why I'm

19   not on the loan.

20      Q.     Just your husband was on the loan?

21      A.     From what I see, yeah.

22      Q.     No one said you had bad credit, you

23   couldn't qualify?

24      A.     Not to my knowledge.

25      Q.     Okay.  You can look at what we've marked

1    as Exhibit 4.

2         A.      Okay.

3         Q.      Have you seen this document before?

4         A.      I'm trying to recall.  I haven't seen it

5    maybe for a while, so just looking at something like

6    this individually -- I mean, I signed this, right,

7    so I must have seen it.  You don't sign something

8    you cannot see.

9         Q.      So you admit that you've seen this

10   document before?

11        A.      Yes.  I had to have seen this document

12   before, I would say.

13        Q.      Do you know what this document is?

14        A.      It says Mortgage on the front of the

15   paper.

16        Q.      Do you know what a mortgage is?

17        A.      Yeah.

18        Q.      What is your understanding of what a

19   mortgage is?

20        A.      Something you would pay, that you live in,

21   a home.

22        Q.      If you look on the first page of the

23   mortgage, the first page --

24        A.      I'm sorry.

25        Q.      That's okay.  Do you see further down

1    where it says that the borrowers have taken out a

2    loan in the principal amount of $1,025,000?

3        A.    Uh-huh.

4        Q.    Is it correct that this is a mortgage for

5    the subject loan?

6        A.    I would say.

7        Q.    If you look at page nine of nine --

8        A.    Nine of nine.  Is it the last -- no.

9    Okay.

10       Q.    Is that your signature in the near middle?

11       A.    That is my signature.

12       Q.    Okay.  Do you know why you signed the

13   mortgage?

14       A.    Because I was told to sign.

15       Q.    And if you look at the next page --

16       A.    Okay.

17       Q.    -- it says adjustable rate rider.  Do you

18   see that?

19       A.    Yeah.

20       Q.    Did you understand that this was part of

21   your mortgage?

22       A.    No.  I was going to ask you, but I knew

23   you wouldn't -- I was going to say what is

24   adjustable rate rider.

25       Q.    Okay.  Well, can we turn to page three of

LEGAL / SECURITY INSTRUMENT

[Space Above This Line For Recording Data]

WHEN RECORDED MAIL TO:

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN: RECORDS MANAGEMENT

Loan Number: 111002709
Servicing Number: 002258684-6
Parcel Number: (4) 4-2-19-12

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on November 22, 2006 . The mortgagor is REID I. TAMAYOSE AND NADINE K. TAMAYOSE, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY

("Borrower").

This Security Instrument is given to
            Option One Mortgage Corporation, a California Corporation
which is organized and existing under the laws of CALIFORNIA                    , and whose business
and post office address is Ada, Irvine, CA  92618
("Lender"). Borrower owes Lender the principal sum of
ONE MILLION TWENTY FIVE THOUSAND                                 ... AND NO/100THs
Dollars (U.S. $1,025,000.00        ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due
and payable on   December 01, 2036                                          . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all

HAWAII Mortgage - Single Family
Page 1 of 9

**CERTIFIED TO BE A TRUE AND
CORRECT COPY OF ORIGINAL**

HID10011 (8-31-06)

EXH 4   DATE 7/21/11
WITNESS Tamayose
SUE M. FLINT

Loan Number: 111002709          Servicing Number: 002259684-6          Date: 11/22/06

renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in                    Kauai                                                    , Hawaii:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of                                                                                          [Street, City]
                    6789 B  KUAMOO RD,  KAPAA
Hawaii          96746-9313          ("Property Address");
          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge,

HAWAII Mortgage - Single Family                                                    HID10012 (8-31-06)
Page 2 of 9

Loan Number:  111002709          Servicing Number:  002258684-6          Date:11/22/06

an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. Lender may assist mortgagor, borrower, or purchaser in obtaining hazard or property insurance if such assistance is requested in writing by the borrower. If Borrower fails to maintain in coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the

Loan Number: 111002709        Servicing Number: 002258684-6        Date:11/22/06

amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specially required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and

entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected

Loan Number:   111002709          Servicing Number:   002258684-6          Date:11/22/06

from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous

HAWAII Mortgage - Single Family
Page 6 of 9

HID10016 (8-31-06)

Loan Number:  111002709     Servicing Number:  002258684-6      Date:11/22/06

Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21.  Acceleration; Remedies.  If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law.  Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give Borrower notice of sale in the manner provided in paragraph 14. Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22.  Release.  Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23.  Waivers.  Borrower relinquishes all right of dower and curtesy in the Property.

24.  Misrepresentation and Nondisclosure.  Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25.  Time is of the Essence.  Time is of the essence in the performance of each provision of this Security Instrument.

26.  Waiver of Statute of Limitations.  The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27.  Modification.  This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

HAWAII Mortgage - Single Family
Page 7 of 9

HID10017 (8-31-06)

Loan Number: 111002709                    Servicing Number: 002258684-6                    Date:11/22/06

28. **Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. **Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. **Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. **Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

32. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

[X] Adjustable Rate Rider          [ ] Condominium Rider              [ ] 1-4 Family Rider
[ ] Manufactured Home Rider        [ ] Planned Unit Development Rider  [ ] Occupancy Rider
[ ] Other(s) (specify)

HAWAII Mortgage - Single Family                                    HID10018 (8-31-06)
Page 8 of 9

Loan Number:  111002709          Servicing Number:  002258684-6          Date:11/22/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____
_____ (Seal)          _____ (Seal)
REID I. TAMAYOSE          -Borrower          -Borrower

_____ (Seal)          _____ (Seal)
          -Borrower          -Borrower

_____ (Seal)          _____ (Seal)
NADINE K. TAMAYOSE          -Borrower          -Borrower

STATE OF HAWAII, *City & County of Honolulu* ss:

On this _____ day of **NOV 24 2006** _____, before me personally appeared *Reid I. Tamayose & Nadine K. Tamayose* , to be known to be the person or persons described in and who executed the foregoing instrument, and acknowledged that the person or persons executed the same as the person's or persons' free act and deed.

My Commission Expires:

(Seal)



_____
Notary Public, State of Hawaii

_____
Notary Name

Jasmine Leong
My Commission Expires: 10/10/08

HAWAII Mortgage - Single Family
Page 9 of 9

HID10019 (08-31-06)



Loan Number:  111002709     Servicing Number:  002258684-6     Date:  11/22/06

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made November 22, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

Option One Mortgage Corporation, a California Corporation

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

6789 B  KUAMOO RD,   KAPAA, HI 96746-9313

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of       7.050%       . The Note provides for changes in the interest rate and the monthly payments, as follows:

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
     (A) Change Dates
     The interest rate I will pay may change on the first day of   December 01    2008 and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
     (B) The Index
     Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
     If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
     (C) Calculation of Changes
     Before each Change Date, the Note Holder will calculate my new interest rate by adding                                                             percentage point(s) ( 5.600% )
     FIVE AND 60/100
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX – Single Family
Page 1 of 3

USRI0021 (02-23-99)

Loan Number:  111002709    Servicing Number:  002258684-6    Date:  11/22/06

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.050% or less than 5.600% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 13.050% or less than 5.600%

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 2 of 3

USRI0022 (02-23-99)

Loan Number:  111002709      Servicing Number:  002258684-6      Date:  11/22/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
REID I. TAMAYOSE

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)
NADINE K. TAMAYOSE

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 3 of 3

USRI0023 (02-23-99)

ORDER NO. : 6828000677-TC

# LEGAL DESCRIPTION EXHIBIT

The land referred to in this Report is situated in the State of Hawaii, and described as follows:

All of that certain parcel of land being a portion of being Lot 28-C-3, situate at Wailua, (Puna), Kauai, Hawaii, State of Hawaii, containing an area of 0.84 acre, more or less, and commonly designated by Tax Map Key (4) 4-2-019-022.

Being all the property described in the following:

DEED
Recorded      :   March 1, 2002 in the Bureau of Conveyances, State of Hawaii, as
                  Document No. 2002-037138
Grantor       :   LINCOLN TSUNEO TAKENAKA, JR., husband of Evelyn Takenaka
Grantee       :   REID I. TAMAYOSE and NADINE K. TAMAYOSE, husband and wife, as
                  Tenants by the Entirety

CORRECTION DEED
Recorded      :   June 25, 2002 in the Bureau of Conveyances, State of Hawaii, as
                  Document No. 2002-110154
Grantor       :   LINCOLN TSUNEO TAKENAKA, JR., husband of Evelyn Takenaka
Grantee       :   REID I. TAMAYOSE and NADINE K. TAMAYOSE, husband and wife, as
                  Tenants by the Entirety