# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| REID I. TAMAYOSE and NADINE K. TAMAYOSE, | ) ) ) | CIVIL NO. 10-00185 JMS/BMK |
| Plaintiffs, | ) ) ) | ORDER (1) GRANTING DEFENDANT RESIDENTIAL CREDIT SOLUTIONS, INC.'S MOTION FOR SUMMARY |
| vs. | ) ) | JUDGMENT, DOC. NO. 71; (2) GRANTING DEFENDANT |
| OPTION ONE MORTGAGE CORPORATION, its successors and assigns; H&R BLOCK BANK; RESIDENTIAL CREDIT SOLUTIONS, INC.; and DOES 1-30, | ) ) ) ) ) ) ) | OPTION ONE MORTGAGE CORPORATION'S, NOW KNOWN AS SAND CANYON CORPORATION, MOTION FOR SUMMARY JUDGMENT, DOC. NO. 76; |
| Defendants. | ) ) | (3) GRANTING THIRD-PARTY DEFENDANT OLD REPUBLIC TITLE |
| —————————————————— RESIDENTIAL CREDIT SOLUTIONS, INC., | ) ) ) | & ESCROW OF HAWAII, LTD.'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 78; AND |
| Third-party Plaintiff, | ) ) ) | (4) GRANTING DEFENDANT H&R BLOCK BANK'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. |
| vs. | ) ) | 80 |
| OLD REPUBLIC TITLE AND ESCROW OF HAWAII, INC., | ) ) ) | |
| Third-party Defendant. | ) ) ) | |
| —————————————————— | ) | |

## ORDER (1) GRANTING DEFENDANT RESIDENTIAL CREDIT SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 71; (2) GRANTING DEFENDANT OPTION ONE MORTGAGE CORPORATION'S, NOW KNOWN AS SAND CANYON CORPORATION, MOTION FOR SUMMARY JUDGMENT, DOC. NO. 76; (3) GRANTING THIRD-PARTY DEFENDANT OLD REPUBLIC TITLE & ESCROW OF

**HAWAII, LTD.'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 78; AND (4) GRANTING DEFENDANT H&R BLOCK BANK'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 80**

## I. INTRODUCTION

This action arises from a November 2006 loan transaction in which Plaintiffs Reid and Nadine Tamayose (collectively, "Plaintiffs") borrowed $1,025,000 from Defendant Option One Mortgage Corporation ("Option One"),[1] to refinance their mortgages on real property located at 6789 B Kuamoo Road, Kapaa, Hawaii 96746 (the "subject property"), and to use the remaining loan proceeds to purchase a mini mart on Oahu. The resulting note and mortgage were subsequently transferred to Defendant H&R Block Bank ("Block Bank"), and then to Defendant Residential Credit Solutions, Inc. ("RCS"). While Block Bank still held the note and mortgage, Plaintiffs' mini mart failed and they got behind on their mortgage payments, which resulted in Block Bank instituting non-judicial foreclosure proceedings in December 2008. In response, Plaintiffs asserted to cancel the loan transaction pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*.

Plaintiffs subsequently filed this action in the First Circuit Court of

---

[1] Option One is now known as Sand Canyon Corporation. For ease of reference, the court refers to this entity as "Option One" throughout this Order.

the State of Hawaii, asserting claims against Defendants pursuant to TILA seeking damages and rescission.  The action was subsequently removed to this court, and RCS brought a third-party complaint seeking indemnity and contribution against Old Republic Title ("ORT"), which handled the escrow for the mortgage transaction.

Currently before the court is Defendants' and Third-Party Defendant's Motions for Summary Judgment, in which they argue, among other things, that Plaintiffs are not entitled to rescission pursuant to TILA because they cannot tender the loan proceeds.  Based on the following, the court agrees that there is no genuine issue of material fact that Plaintiffs are unable to tender the loan proceeds and GRANTS Defendants' and Third-Party Defendant's Motions for Summary Judgment.

## II. BACKGROUND

**A.  Factual Background**

In the fall of 2006, Plaintiffs decided to purchase Helen's Party Store in Honolulu and operate it as Tsuni's Mini Mart.  Reid Tamayose explained that Plaintiffs were looking for a new "venture" that would take them off of Kauai:

> Like every Kauai person, you get island fever and you get bored of what you're doing there, because it's so mundane.  It's a beautiful place to live, but there's not much opportunity, and I guess I was bored in what I was

> doing and I guess because we had equity or something in
> the house, we were looking for another venture, and
> because my daughter was going to be coming to school
> here, we thought, hey, it might be a great time to jump in.
> . . .

Doc. No. 106-2, RCS Ex. V at 134-35.  Reid Tamayose was familiar with the store

from when he used to live in Honolulu, and "basically, we just spur of the moment

said, Hey, we're tired of here, let's try something else . . . ."  *Id.* at 135.  To that

end, on September 12, 2006, Nadine Tamayose signed a Deposit Receipt Offer and

Acceptance to purchase Helen's Party Store for $175,000, Doc. No. 78-15, ORT

Ex. J, and on November 13, 2006, Plaintiffs signed the Bill of Sale.  Doc. No. 78-

16, ORT Ex. K.

Plaintiffs obtained the funds to purchase Helen's Party Store by

refinancing their mortgages on the subject property with Option One.  Nadine

Tamayose asserts that they entered into this loan transaction both to obtain the

funds for Tsuni's Mini Mart as well as to obtain a better overall interest rate on

their mortgage.  *See* Doc. No. 101, Nadine Tamayose Decl. ¶ 3.  Further, the

Uniform Residential Loan Application, filled out by Option One, states that the

purpose of this loan is to "refinance."  *See* Doc. No. 101-1, Pls.' Ex. A; *see also*

Doc. No. 101, N. Tamayose Decl. ¶ 7 (stating that "Option One considered the

purpose of the loan was a 'refinance'").

On November 24, 2006, Reid Tamayose executed a promissory note (the "Note") in the principal amount of $1.025 million in favor of Option One, which was secured by a mortgage (the "Mortgage") executed by Plaintiffs and recorded in the Bureau of Conveyances. Doc. No. 98, Block Bank Concise Statement of Facts ("CSF") ¶¶ 2-3.[2] From the $1.025 million, Plaintiffs (1) paid off two mortgages totaling $775,085.59; (2) sent $171,610.51 to First Hawaii Title to fund the purchase of Helen's Party Store; and (3) received $59,968.44 in cash, which also went to their new business. Doc. No. 98, Block Bank CSF ¶¶ 4-5; *see also* N. Tamayose Decl. ¶ 5.

The closing of the loan was handled through ORT's King Street branch office on Oahu. Doc. No. 79, ORT CSF ¶ 6. In entering into this loan transaction, Plaintiffs signed that they received the Good Faith Estimate, the Mortgage, the Federal Truth-in-Lending Disclosure Statement, and two copies of the Notice of Right to Cancel. Doc. No. 98, Block Bank CSF ¶ 6; *see also* Doc. No. 74, RCS CSF ¶ 6; Doc. No. 71-17, RCS Ex. M. During their depositions, Plaintiffs admitted that they signed the forms indicating that they received two copies of the Notice of the Right to Cancel, Doc. No. 77-18, Option One Ex. 14 at

_____

[2] Where the parties do not dispute a particular fact, the court cites directly to the particular Defendant's CSF.

72-74, Doc. No. 77-21, Option One Ex. 15 at 59-60, yet Reid Tamayose could not recall whether they actually received two copies. Doc. No. 77-18, Option One Ex. 14 at 74. Further, Nadine Tamayose now asserts that they received only one copy of the Notice of Right to Cancel during the loan closing. Doc. No. 101, N. Tamayose Decl. ¶ 21. In contrast, Dodie Haumea, a supervisor in the Quality Assurance Department for ORT, explained that it is ORT's custom and practice to, among other things, require the borrowers to sign four sets of the Notice of Right to Cancel such that two originals are given to the borrowers and ORT retains the other originals for the lender. Doc. No. 78-4, Haumea Decl. ¶ 18.

Nadine Tamayose asserts that at the time of closing, they were still living in the subject property and they maintained the subject property as their principal and primary residence by keeping all utilities in their name, paying the real estate taxes, and keeping all of their belongings there. Doc. No. 101, N. Tamayose Decl. ¶¶ 10-12; *see also* Doc. No. 101-1, Pls.' Ex. A (Uniform Residential Loan Application stating that the subject property will be Plaintiffs' primary residence). With that said, however, Plaintiffs ultimately lived in Honolulu for two years while they operated Tsuni's Mini Mart. Doc. No. 78-18, ORT Ex. M at 129.

The Note and Mortgage were subsequently assigned to Block Bank

and on October 24, 2007, an Assignment of Mortgage and Note was recorded in the Bureau of Conveyances.[3]  Doc. No. 80-16, Block Bank Ex. 13.  Sometime in 2008, Plaintiffs defaulted on the loan (Tsuni's Mini Mart had failed), resulting in Block Bank issuing a Notice of Mortgagee's Foreclosure Under Power of Sale setting a public auction for December 5, 2008.  *See* Doc. No. 1-2, Compl. Ex. D; *see also* Doc. No. 71-11, RCS Ex. G at N. Tamayose Depo. 106-09.  On December 4, 2008, Plaintiffs, through their counsel, notified Block Bank and Option One that Plaintiffs were exercising their right to cancel the loan, based on various alleged TILA violations that had occurred.  *See* Doc. No. 101-3, Pls.' Ex. C.

On June 16, 2009, Block Bank assigned the Mortgage and Note to RCS.  *See* Doc. No. 81-17, Block Bank Ex. 14.

As to whether Plaintiffs could have returned to Block Bank the loan proceeds less any interest, finance charges, and other deductions either now or on December 4, 2008 when they demanded rescission, Plaintiffs testified that they could have possibly raised the funds from family and friends.  For example, Reid Tamayose testified that although he did not ask his friends or family for a loan and he could not otherwise say how much they would loan him, he was "sure" that his

---

[3] Plaintiffs dispute that the Note and Mortgage were transferred, yet fail to present any evidence suggesting otherwise.

family would loan him the funds:

> Q: . . .  Basically, you had a $1,025,000 loan.  You're
> going to take off the settlement charges which in the
> HUD which we looked at, Exhibit 1, was about
> $18,335.46.  That would bring the balance down to about
> 1,006,664.40 less approximately the interest.  So on
> December 4, 2008, could you pay back to the lender
> about one million dollars?
>
> A.  Possibility.
>
> Q.  How?
>
> A.  Family and friends.
>
> Q.  What family?  What friends?
>
> A.  Well, I already mentioned my family, so I don't need
> to mention that again.
>
> Q.  So you're talking about your mother and your two
> aunts?
>
> A.  They would be able to help if I needed it.
>
> . . .
>
> Q.  Anyone else?
>
> A.  No.
>
> Q.  And did you ask them to help you on December 4th,
> 2008?
>
> A.  No, I did not.
>
> . . .
>
> Q.  How much could your mother give on December 4,
> 2008?
>
> . . .
>
> A.  I don't know.
>
> Q.  You don't know, but you're saying that you could
> pay back at least a million dollars, so --
>
> A.  I'm sure she could help me.
>
> Q.  How much could she give you?
>
> A.  I don't know.
>
> Q.  How much could your aunts give you?
>
> A.  I don't know.
>
> . . .
>
> Q.  So other than your mother and your two aunts, how

were you going to get the money?
A.  There are more members of my family, if needed, but --
Q.  Well, I'm asking you for the specifics of how you're going to pay back a million dollars.
A.  Well, with those three people, that's enough right there.
Q.  They're going to give you a million dollars?
A.  They could, if they needed to, between the three of them.

Doc. No. 81-19, Block Bank Ex. 15 at 80-82.

Nadine Tamayose similarly testified that they could "maybe" have borrowed money from her mother-in-law:

Q. . . .  Could you have paid back [the loan proceeds] to the lender on December 4, 2008?
A.  There's a possibility.
Q.  How?
A.  Maybe.
Q.  How.
A.  Maybe my mother-in-law.
. . .
Q.  Did you ask your mother-in-law to give you one million dollars?
A.  No.  We haven't asked yet.  No, we haven't asked.

Doc. No. 81-20, Block Bank Ex. 16 at 76-78.

Beyond seeking funds from friends, Plaintiffs conceded that they themselves could not make a lump-sum payment of the loan proceeds either on December 4, 2008 or now.  *Id.* at 78.  Indeed, Nadine Tamayose admitted that although they stopped making mortgage payments, they did not save even the

money that would have been paid toward the mortgage for rescission:

> Q. . . .   So basically, if you were making a $6,000 a
> month mortgage payments, and let's just say that you
> haven't paid since this letter marked as Exhibit 8 was
> sent, which was December 4th, 2008 -- so that would
> mean from January of 2009, no mortgage payments were
> being made until today.  So that's approximately 30
> months of not making mortgage payments; is that
> correct?
> A.  I think so.  I don't know.
> Q.  So 30 months times $6,000, that's $180,000.
> A.  Okay.
> . . .
> Q.  Do you have $180,000 today?
> A.  No, not today.

*Id.* at 112-13.

Nadine Tamayose nonetheless asserts that they might be able to pay

the loan proceeds through refinancing, borrowing from friends, or even selling the

subject property:

> 14. . . . [W]e have a close-knit extended family on Kauai
> as well as many close friends who we believe would help
> us refinance, but to do so we would need to show family
> and friends and local mortgage brokers and lenders that
> we have the right to refinance at a reduced TILA balance.
> 15.  At our depositions, we were constantly asked if we
> could pay the entire balance upfront, apparently designed
> to make it look as if we could not benefit from a TILA
> principal reduction, which without financing obviously
> few borrowers could.
> 16.  And were we unable to secure refinancing assistance,
> we could sell our residence, which obviously we would
> prefer not to do, but those are choices that as a practical

matter we cannot make until we receive a TILA
rescission principal reduction and know what that amount
will be and have something official to show lenders,
family and friends.

Doc. No. 101, N. Tamayose Decl. ¶¶ 14-16.

## B.     Procedural Background

On November 23, 2009, Plaintiffs filed this action in the First Circuit

Court, State of Hawaii, alleging claims for declaratory and injunctive relief under

TILA.  Specifically, Count One (entitled "Declaratory Judgment") asserts:

Tamayoses seek a declaratory judgment that said 2006
loan has been cancelled as a matter of federal law and
that said nonjudicial foreclosures were and are wrongful,
and preventing Option One, H&R, and/or RCS from
scheduling any further nonjudicial foreclosure actions
and pursuing any transfer of title to either of them or to a
third party by exercising a "power of sale" clause in their
adhesive 2006 Mortgage . . . and [] an award of actual
and/or statutory damages, including attorneys' fees and
costs[.]

Compl. ¶ 12.  Count Two of the Complaint seeks injunctive relief to prevent

further foreclosure proceedings, and Count Three seeks punitive damages.  *Id*. at 4-

5.  On March 30, 2010, Option One removed the action to this court.

On November 10, 2010, the court granted Option One's Motion for

Partial Summary Judgment as to any claim against it regarding or seeking

cancellation or rescission.  As a result, only Plaintiffs' claims for damages remain

against Option One.

Defendants and Third-Party Defendant filed their various Motions for Summary Judgment on September 9 and 14, 2011, and Plaintiffs filed an Opposition on November 18, 2011.  Replies were filed on November 28, 2011.  A hearing was held on December 5, 2011.  Plaintiffs submitted a supplemental filing on December 16, 2011, and Defendants submitted a supplemental filing on December 23, 2011.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

      "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

# IV. **DISCUSSION**

In their Motions for Summary Judgment, Defendants and Third-Party Defendant raise a panoply of arguments for why Plaintiffs' TILA claim fails. These arguments were made for good reason -- their discovery suggests that: (1) TILA does not apply because Reid Tamayose testified that they took out the mortgage loan to finance Tsuni's Mini Mart and not for personal purposes, *see* Doc. No. 106-2, RCS Ex. V at 134-35; (2) TILA does not apply because Plaintiffs testified that they had moved to Honolulu to run their new business such that the subject property was no longer Plaintiffs' primary residence, *see* Doc. No. 78-18, ORT Ex. M at 129; and (3) even if TILA applies to the mortgage transaction, no TILA violation occurred given that Plaintiffs could not identify the TILA violations in their depositions and otherwise could not state for certain whether they received two notices of the right to cancel. Doc. No. 77-18, Option One Ex. 14 at 74.

Despite being unable to answer during their depositions even the most basic questions regarding why they brought this action and the basis of their claims, Nadine Tamayose had an apparent sudden memory recall after receiving Defendants' Motions because she now asserts in her Declaration that (1) the subject property was always their primary residence; (2) Plaintiffs took out the

mortgage loans to obtain a better mortgage rate; and (3) Defendants violated TILA by failing to provide two copies of the Notice of Right to Cancel.  Beyond Nadine Tamayose's Declaration, Plaintiffs do not provide any specific evidence supporting these naked allegations -- Plaintiffs present no evidence establishing when they moved to Honolulu and/or whether they even visited the subject property after the mortgage loan transaction, or how Plaintiffs concluded that the mortgage transaction provided them a better mortgage loan rate given that their first mortgage on its face appears to have less desirable loan terms.

Given the timing of Nadine Tamayose's revelations, the court has serious concerns as to their veracity.  Plaintiffs' counsel, who has numerous TILA actions in this District, has represented other clients who have had similar memory recalls in opposition to motions for summary judgment.  Nonetheless, the court ultimately need not address these arguments raised by Defendants and Third-Party Defendant because summary judgment may be granted on other grounds.  The court addresses Plaintiffs' claims in turn.

///

///

///

///

## A.    Count I (TILA)

Plaintiffs assert a TILA claim for rescission and a TILA damages claim based on Defendants' failure to honor Plaintiffs' TILA request.[4]

As to Plaintiffs' TILA rescission claim, Defendants argue that this claim fails because there is no genuine issue of material fact that Plaintiffs can tender the loan proceeds.  This court has already found once that it may condition TILA rescission on a plaintiff's tender of the loan proceeds.  *See Beazie v. Amerifund Fin., Inc.*, 2011 WL 2457725, at *7 (D. Haw. June 16, 2011).  *Beazie* came to this conclusion based on *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003), which expressly recognizes that the trial court has discretion to reorder the steps laid out in TILA's rescission provision, 15 U.S.C. § 1635(b)[5] to require the borrower to establish an ability to tender before rescission

---

[4]  At the December 5, 2011 hearing, Plaintiffs clarified that they were not seeking TILA damages based on any TILA violations that allegedly occurred during consummation of the loan.

[5]  15 U.S.C. § 1635(b) provides:

> Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. . . .  Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.

16

is ordered.  *Yamamoto* explains:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures *after* deciding that rescission is warranted, may not do so *before* deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what.  Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds.  If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Yamamoto*, 329 F.3d at 1173.

Although Plaintiffs (represented by the same plaintiff's counsel in *Beazie*) disagree with *Yamamoto*, Plaintiffs provide no new arguments that persuade the court that *Yamamoto* does not allow the court to condition TILA rescission on a borrower's ability to tender.  Indeed, since *Beazie*, the Ninth Circuit has confirmed that the court may condition TILA rescission on a borrower's ability to first tender the loan proceeds, and has even suggested that a borrower must affirmatively plead an ability to tender.  *See Hogan v. NW Trust Servs., Inc.*, --- Fed. Appx. ----, 2011 WL 2601563, at *1 (9th Cir. July 1, 2011) ("The district

court properly dismissed appellants' TILA claim seeking rescission because appellants did not allege the ability to tender the proceeds of the loan."); *see also Pierro v. Spiegel Dev., Inc.*, 2011 WL 6176077, at *1 (9th Cir. Dec. 13, 2011) (stating that on remand, "the district court may also consider under *Yamamoto* whether to reorder the default rescission sequence, in which the creditor must release its lien before the consumer must tender").[6] The court therefore reiterates its holding in *Beazie* that the court has discretion to condition TILA rescission on a borrower's ability to tender the loan proceeds.

Based upon the evidence presented, the court exercises its discretion in this case to find that rescission should be conditioned on Plaintiffs' tender of the loan proceeds. As *Beazie* reasoned, "[r]equiring Plaintiff[s] to prove an ability to tender ensures that rescission is more than a hollow remedy and that the parties will be placed in the positions they held before consummation of the loan transaction." *Beazie*, 2011 WL 2457725, at *7. Further, Plaintiffs do not suggest any reason why the particular circumstances of this action support that Plaintiffs should not be required to tender the loan proceeds before the mortgage is released. *See Riopta v. Amresco Residential Mortg. Corp.*, 101 F. Supp. 2d 1326, 1334-35

---

[6] Although these cases are not published, they issued after January 1, 2007 and may be cited pursuant to Ninth Circuit Rule 36.1(b) and Federal Rule of Appellate Procedure 32.1(a).

(D. Haw. 1999) (rejecting argument that the TILA violations were so egregious to change the court's discretion in requiring plaintiffs to tender the loan proceeds before mortgagee released security interest in the property).

As to whether there is a genuine issue of material fact that Plaintiffs are able to tender the loan proceeds, Defendants have carried their burden of coming forward with evidence establishing that Plaintiffs could not tender the loan proceeds on their own, either now or on December 4, 2008 when they first demanded rescission. *See* Doc. No. 81-21, Block Bank Ex. 16 at 88, 112-13. Indeed, Nadine Tamayose admitted that they do not have in their possession the approximate $1 million dollars of loan proceeds, much less a smaller amount to tender. *See* Doc. No. 81-21, Block Bank Ex. 16 at 88, 112-13.

Because Defendants have carried their burden of demonstrating the absence of a genuine issue of material fact that Plaintiffs cannot tender the loan proceeds, Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 (citation and internal quotation signals omitted). Plaintiffs have failed to carry their burden, instead relying on only the most conclusory and speculative assertions regarding what they *might* be able to gather through friends,

refinancing, and/or selling the subject property. But "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984 (citing *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.")); *see also Cypert v. Indep. Sch. Dist. No. I-050 of Osage Cnty,*, 661 F.3d 477, 481 (10th Cir. 2011) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." (quotations omitted)).

For example, Plaintiffs assert that friends and family *might* be able to provide the loan proceeds *if asked* -- Reid Tamayose testified that his mother and two aunts "could, if they needed to, between the three of them," provide him the loan proceeds, Doc. No. 81-19, Block Bank Ex. 15 at 80-82, and Nadine Tamayose testified that "[m]aybe my mother-in-law" might be able to provide them the funds. Doc. No. 81-20, Block Bank Ex. 16 at 76-78; *see also* Doc. No. 101, N. Tamayose Decl. ¶ 14 (Nadine Tamayose asserting that "we have a close-knit extended family on Kauai as well as many close friends who we believe would help us refinance"). But Plaintiffs did not come forward with any specific evidence establishing how

much funds their friends or family are willing to loan them -- indeed, Plaintiffs admit that they have not even asked any family or friends whether they can borrow any funds.  Doc. No. 81-19, Block Bank Ex. 15 at 80-82, Doc. No. 81-20, Block Bank Ex. 16 at 76-78.  Plaintiffs also assert that they might be able to secure refinancing assistance, *see* Doc. No. 101, N. Tamayose Decl. ¶¶ 14-15, yet they present no evidence of any proposed refinancing transactions that would assist them in tendering the loan proceeds.  And although Plaintiffs assert that they would not be able to obtain proposed mortgage loan information until they are granted rescission, this assertion (like all of Plaintiffs' assertions regarding ability to tender) is wholly unsubstantiated by any evidence -- Plaintiffs fail to offer any *evidence* suggesting this is the case.  Finally, Plaintiffs assert that as a last resort they could sell the subject property, but Plaintiffs fail to present any evidence establishing the fair market value of the subject property compared to the tender amount to show that selling the subject property might allow them to tender the loan proceeds.

In sum, Plaintiffs have presented no evidence establishing (1) how much funds Plaintiffs themselves could tender; (2) how much funds each of their relatives and friends is actually willing to loan Plaintiffs; (3) how much funds Plaintiffs could obtain through a bank (whether through refinancing or some other

arrangement); or (4) how much funds Plaintiffs could raise through selling the subject property. Plaintiffs' speculation regarding what they *might* be able to gather through friends, refinancing, and selling the subject property is simply insufficient to create a genuine issue of material fact that they are able to tender the loan proceeds. *See Slowjewski v. Polam Fed. Credit Union*, 2010 WL 4973757, at *11 (N.D. Cal. Dec. 1, 2010) (granting summary judgment on TILA rescission claim where the plaintiff failed to present any evidence of an approval or pre-approval by a bank, failed to present evidence of the current value of the property, and failed to provide declarations of friends and families stating the amounts of money they were willing to loan plaintiff); *see also Yamamoto*, 329 F.3d at 1173 (affirming summary judgment where plaintiffs were unable to show ability to tender the loan proceeds); *ING Bank v. Korn*, 2011 WL 5326146, at *4 (W.D. Wash. Nov. 4, 2011) (granting summary judgment where borrowers admitted that "they do not have the capacity to pay back what they have received"); *Cavaco v. Mortg. Elec. Registration Sys., Inc*., 2011 WL 1565979, at *5 (D. Haw. Apr. 25, 2011) (granting summary judgment where the plaintiff "presents no evidence that she has the ability to tender an appropriate amount back to the lender"); *cf. Bolton v. Bank of Am., N.A.*, 2011 WL 1842834, at *3 (E.D. Wash. May 16, 2011) (denying summary judgment where the plaintiffs presented evidence that the

property was valued at $725,000, which exceeded the loan amount of $580,000). The court therefore GRANTS the Motions for Summary Judgment on Plaintiffs' TILA rescission claim.

As to Plaintiffs' TILA damages claim, Plaintiffs conceded at the December 5, 2011 hearing that if they are not entitled to rescission, then their TILA damages claim also fails. The court therefore GRANTS the Motions for Summary Judgment on Plaintiffs' TILA damages claim as well.

## B.    Counts II and III (Injunctive Relief and Punitive Damages)

Defendants argue that summary judgment should be granted on Plaintiffs' claims for injunctive relief and punitive damages because they are derivative of Plaintiffs' TILA claim. Indeed, these Counts appear to seek relief based solely on Plaintiffs' TILA claim and fail to assert independent claims for relief. Further, Plaintiffs offer no argument suggesting otherwise. Thus, because Plaintiffs' TILA claim fails, these claims fail as well and the court GRANTS Defendants' Motion for Summary Judgment on Counts II and III.

## V.  CONCLUSION

For the foregoing reasons, the court (1) GRANTS RCS's Motion for Summary Judgment, Doc. No. 71; (2) GRANTS Option One's Motion for Summary Judgment, Doc. No. 76; (3) GRANTS Third-Party Defendant ORT's

Motion for Summary Judgment, Doc. No. 78; and (4) GRANTS Block Bank's

Motion for Summary Judgment, Doc. No. 80. The Clerk of Court is directed to

close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 5, 2012.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Tamayose, et al. v. Option One Mortg. Corp., et al.*, Civ. No. 10-00185 JMS/BMK, Order (1) Granting Defendant Residential Credit Solutions, Inc.'s Motion for Summary Judgment, Doc. No. 71; (2) Granting Defendant Option One Mortgage Corporation's, Now Known as Sand Canyon Corporation, Motion for Summary Judgment, Doc. No. 76; (3) Granting Third-Party Defendant Old Republic Title & Escrow of Hawaii, Ltd.'s Motion for Summary Judgment, Doc. No. 78; and (4) Granting Defendant H&R Block Bank's Motion for Summary Judgment, Doc. No. 80